Argued May 8, affirmed June 19, petition for rehearing denied
September 11, 1957

# STATE OF OREGON *v.* IDAHO POWER CO.

312 P. 2d 583

*E. G. Foxley,* Deputy Attorney General, Salem, argued the cause for appellant. With him on the briefs was Robert Y. Thornton, Attorney General, Salem.

*A. S. Grant,* Baker, and *R. P. Parry,* Twin Falls, Idaho, argued the cause for respondent. On the brief was A. S. Grant.

Before PERRY, Chief Justice, and BRAND, MC-ALLISTER and KESTER, Justices.

PERRY, C. J.

This appeal by the State of Oregon arises from the trial court's sustaining of the defendant's demurrer to the indictment.

The indictment, which was returned by the grand jury for Baker county on July 6, 1956, against the defendant, reads as follows:

"AMENDED INDICTMENT

"The IDAHO POWER COMPANY, a Maine corporation, is accused by the Grand Jury of the County of Baker by this Indictment of the crime of BEGINNING AND CONSTRUCTING A WATER POWER PROJECT WITHOUT A PRELIMINARY PERMIT OR LICENSE, committed as follows:

"The said IDAHO POWER COMPANY, a Maine corporation, on or about the 3rd day of May, 1956, in the said County of Baker, and State of Oregon, then and there being, and not acting for or on behalf of any city, town, utility district or other municipal corporation of this state, did then and there unlawfully and wilfully fail and refuse to comply with the provisions of ORS 543.010 to 543.-620, by then and there beginning to construct and constructing a dam across the Snake River in the vicinity of section 25, township 8 south, range 47

east of the Willamette Meridian, commonly known as the Brownlee site, in said county, said dam then and there being a part of a certain water power project for the generation of electricity and involving the appropriation and use of the waters of said river without having first obtained a preliminary permit or a license from the Hydroelectric Commission of Oregon so to do, and said act of defendant being contrary to the statutes in such cases made and provided, and against the peace and dignity of the State of Oregon."

The parties agreed that in considering the demurrer the trial court should take judicial notice of the license issued the defendant by the Federal Power Commission for construction of the dam.

The Federal Power Commission on August 4, 1955, issued to the defendant Idaho Power Company a license for the construction, operation, and maintenance of a proposed Brownlee, Oxbow, and Hells Canyon development, which development for the purpose of a license was considered as a single project designated as No. 1971. The license and order issued provides in part as follows:

"The proposed Brownlee, Oxbow and low Hells Canyon developments that would be constructed by Applicant would be located in and along a navigable water of the United States; and they would otherwise affect the interests of interstate or foreign commerce by affecting the downstream navigable capacity of the river.

"The Brownlee, Oxbow and low Hells Canyon developments proposed by Applicant in the Hells Canyon reach of the Snake River would occupy lands of the United States.

"The Idaho Power Company * * * has submitted satisfactory evidence of compliance with the requirements of all applicable State laws in-

sofar as necessary to effect the purposes of a license for each of the developments.

"The proposed project is best adapted to a comprehensive plan for improving or developing a waterway for the use or benefit of interstate or foreign commerce, for the improvement and utilization of water-power development, and for other beneficial public uses, including recreation purposes."

The defendant Idaho Power Company is required to "Commence construction of the Brownlee unit within one year of the effective date [i.e. August 1, 1955] of this license, and shall thereafter in good faith and with due diligence prosecute such construction; and shall complete that unit in 36 months."

ORS 543.010 to 543.620, in general, provides for the creation of a Hydroelectric Commission and, among other things, requires that anyone seeking appropriations of the waters within the state or waters over which the state has concurrent jurisdiction shall first obtain a permit from the Hydroelectric Commission, and, if the project is approved, shall then secure a license to construct and operate the project in accordance with the Act. The Act also provides that the right to use the water in the generation of electricity cannot be acquired except pursuant to its provisions, and that the Commission may deny an application if in its judgment the project is "unfeasible or the public interest requires the denial thereof." Penalties are provided for failure to comply with the provisions of the law.

Both counsel for the state and counsel for the defendant concede that the Snake river at the point in question is a navigable waterway of the United States and forms the boundary between the states of Idaho and Oregon.

While the defendant has not been charged with using or appropriating water, both parties concede that the construction of the dam would be tantamount to the use and appropriation of such water notwithstanding the multipurpose aspects of the dam which include, in addition to the generation of electricity, flood control and navigation.

The state's contention is that the use and appropriation of water rights, including the waters of the Snake river, is within the control and authority vested in the state of Oregon and not within the authority of the licensing power of the Federal Power Commission. This contention is based upon the savings provisions of the Federal Water Power Act, 41 Stat 1063, § 9(b) and § 27, 16 USCA §§ 802 (b) and 821.

Section 9(b) provides as follows:

"Sec. 9. That each applicant for a license hereunder shall submit to the commission—

\* \* \* \* \*

"(b) Satisfactory evidence that the applicant has complied with the requirements of the laws of the State or States within which the proposed project is to be located with respect to bed and banks and to the appropriation, diversion, and use of water for power purposes and with respect to the right to engage in the business of developing, transmitting, and distributing power, and in any other business necessary to effect the purposes of a license under this Act."

Section 27 reads as follows:

"That nothing herein contained shall be construed as affecting or intending to affect or in any way to interfere with the laws of the respective States relating to the control, appropriation, use, or distribution of water used in irrigation or for municipal or other uses, or any vested right acquired therein."

Upon first impression it would appear that the language used in section 9(b) requires compliance with any state regulatory measure prior to the issuance of a federal license; but Mr. Justice Burton, speaking for the majority, in *First Iowa Hydro-Electric Cooperative v. Federal Power Commission,* 328 US 152, 168, 90 L ed 1143, 66 S Ct 906, dispelled any such impression with the following language:

"* * * A dual final authority, with a duplicate system of state permits and federal licenses required for each project, would be unworkable. 'Compliance with the requirements' of such a duplicated system of licensing would be nearly as bad. Conformity to both standards would be impossible in some cases and probably difficult in most of them. The solution adopted by Congress, as to what evidence an applicant for a federal license should submit to the Federal Power Commission, appears in § 9 of its Act. It contains not only subsection (b) but also subsections (a) and (c). Section 9(c) permits the Commission to secure from the applicant 'Such additional information as the commission may require.' This enables it to secure, *in so far as it deems it material,* such parts or all of the information that the respective States may have prescribed in state statutes as a basis for state action. The entire administrative procedure required as to the present application for a license is described in § 9 and the Rules of Practice and Regulations of the Commission. (Italics theirs.)

"The securing of an Iowa state permit is not in any sense a condition precedent or an administrative procedure that must be exhausted before securing a federal license. It is a procedure required by the State of Iowa in dealing with its local streams and also with the waters of the United States within that State in the absence of an assumption of jurisdiction by the United States over the navigability of its waters. Now that the Federal Government has taken jurisdiction of such

waters under the Federal Power Act, it has not by statute or regulation added the state requirements to its federal requirements."

In a footnote on page 169 of the opinion, Mr. Justice Burton, speaking of the Rules of Practice and Regulation of the Commission, said: "They cover the field so fully as to leave no purpose to be served by filing comparable information required in some alternative form under state laws as a basis for a state permit."

Greater emphasis is placed by the state upon the provisions of section 27 of the Federal Water Power Act. It contends that such section is crucial to the issues to be determined in the present appeal. There is no question that section 27 is a saving clause as to proprietary rights under state laws. *Federal Power Commission v. Niagara Mohawk Power Corp.,* 347 US 239, 98 L ed 666, 74 S Ct 487; *Ford & Son v. Little Falls Fibre Co.,* 280 US 369, 74 L ed 483, 50 S Ct 140.

The Court in the Niagara Mohawk case, supra, p. 255, said:

"After quoting from §§ 10(c) (liability for damages caused by the licensed project), 27 (saving clause as to proprietary rights under state law), 21 (condemnation rights) and 6 (licensee's acceptance of the conditions of the Act), the Court [in Ford & Son v. Little Falls Fibre] added:

" 'While these sections are consistent with the recognition that state laws affecting the distribution or use of water in navigable waters and the rights derived from those laws may be subordinate to the power of the national government to regulate commerce upon them, they nevertheless so restrict the operation of the entire act that the powers conferred by it on the Commission do not extend to the impairment of the operation of those laws or to the extinguishment of rights acquired under them without remuneration. We think the interest here as-

serted by the respondents, so far as the laws of the state are concerned, is a vested right acquired under those laws and so is one expressly saved by § 27 from destruction or appropriation by licensees without compensation, and that it is one which petitioner, * * * by acceptance of the license under the provisions of § 6, must be deemed to have agreed to recognize and protect.' "

■ Thus it may be stated that even though a state might claim that it has a proprietary right, as distinguished from a governmental power, in the waters of a navigable stream, section 27 would grant to the state only the same right to be compensated as is granted an individual with rights that have vested in accordance with the laws of the state, and not the right to prevent the federal government from exercising its powers as granted in the Constitution of the United States until compensation was made for the appropriation of the right. *Federal Power Commission v. Oregon,* 349 US 435, 99 L ed 1215, 75 S Ct 832; *Federal Power Commission v. Niagara Mohawk Power Corp.,* supra.

■ However, the question of compensation or right to compensation is not before the Court, and cannot be considered in a criminal proceeding. Our only concern is whether the state has the power to veto a license granted by the federal government to construct a dam across a navigable stream for purposes of generating electricity. The right to grant a hydroelectric permit includes the right to deny it. Neither section 9(b) nor section 27 grants to the states this right. *Federal Power Commission v. Oregon,* supra.

■ It is unnecessary to cite authority for the long-settled proposition that powers granted by the people of the United States to the federal government in the

constitution and laws passed pursuant thereto shall be the supreme law of the land. If there is any conflict between such laws and a law passed by a state, even in the exercise of its acknowledged powers, the state law must yield.

The judgment of the trial court is affirmed.